UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 17-cr-0208 (WMW/SER) |
| Plaintiff, | |
| v. | **ORDER ADOPTING IN PART AND REJECTING IN PART REPORT AND RECOMMENDATION** |
| Pisanu Sukhtipyaroge, | |
| Defendant. | |

On January 11, 2018, United States Magistrate Judge Katherine M. Menendez issued a Report and Recommendation (R&R) in this case. (Dkt. 83.) The R&R recommends granting in part and denying in part Defendant Pisanu Sukhtipyaroge's Motion to Suppress Evidence Obtained as a Result of Search and Seizure. (Dkt. 46.) Both Plaintiff United States of America and Sukhtipyaroge timely objected to the R&R. For the reasons that follow, the objection of the United States to the R&R is sustained, Sukhtipyaroge's objection to the R&R is overruled, and Sukhtipyaroge's motion to suppress evidence is denied.

## BACKGROUND[1]

In July 2017, Detective Michael Schantzen of the Anoka County Sherriff's Office interviewed A.M., an alleged victim of human trafficking. During the interview, A.M. reported that his family and Sukhtipyaroge agreed in 2015 that A.M. would move to the United States and Sukhtipyaroge would pay for A.M.'s education. According to Detective Schantzen, A.M. stated that Sukhtipyaroge began engaging in unwanted sexual

---

[1] The background addressed here is limited to the facts necessary to resolve the contested issues before the Court.

contact with him "not too long" after A.M. arrived in the United States. When Sukhtipyaroge subsequently prevented A.M. from attending school, A.M. began working at Sukhtipyaroge's restaurant, Royal Orchid. A.M. reported that while working at Royal Orchid, Sukhtipyaroge threatened A.M. with deportation to coerce A.M.'s compliance with ongoing sexual contact. After A.M. disclosed that his cell phone contained photographs of his sexual contact with Sukhtipyaroge, Detective Schantzen copied the contents of A.M.'s cell phone with A.M.'s consent.

A.M. also reported that Sukhtipyaroge permitted him to use Sukhtipyaroge's computer at Royal Orchid to communicate with A.M.'s family. A.M. advised Detective Schantzen that this computer may contain videos of Sukhtipyaroge engaging in sexual acts, including one video that A.M. believed may depict a minor. According to A.M., these videos were on an SD card[2] that A.M. had removed from Sukhtipyaroge's computer and possessed for the past year. A.M. voluntarily gave this SD card to Detective Schantzen. Detective Schantzen obtained a warrant to search the contents of the SD card because he believed that A.M. could not consent to the search of an SD card that A.M. did not own. Detective Schantzen also secured search warrants for Sukhtipyaroge's residence and Royal Orchid. The warrants authorized a broad range of items and data to be searched, including "[c]ellular phones and other devices that may contain text messages, voicemails, photographs, emails and other types of communication" and authorized a "forensic examination" of any recovered electronic media.

---

[2]   An SD card is a secure digital card, which is a type of removable electronic media storage device. *See, e.g.*, *United States v. Emly*, 747 F.3d 974, 976 (8th Cir. 2014).

Detective Schantzen arrested Sukhtipyaroge at a retail store on August 1, 2017, and, during a search incident to arrest, seized a fanny pack, keys to Sukhtipyaroge's vehicle, and Sukhtipyaroge's HTC cell phone. Law enforcement officers thereafter executed the search warrants at Sukhtipyaroge's residence and Royal Orchid. Detective Schantzen subsequently realized that he submitted Sukhtipyaroge's HTC cell phone for forensic analysis without a warrant because the cell phone was seized during Sukhtipyaroge's arrest rather than during a search of Sukhtipyaroge's residence or Royal Orchid. Homeland Security Special Agent Charles Bautch thereafter applied for a search warrant for Sukhtipyaroge's HTC cell phone. Special Agent Bautch explained in the search warrant application that state authorities had erroneously searched the cell phone and the application did not rely on any information recovered from the warrantless search. A magistrate judge issued a search warrant for Sukhtipyaroge's HTC cell phone based on the application.

Sukhtipyaroge moves to suppress the SD card, the HTC cell phone, and any evidence obtained from either device, arguing that the SD card was unlawfully seized and that the HTC cell phone was unlawfully searched. The R&R recommends granting Sukhtipyaroge's motion to suppress the SD card because no exception to the warrant requirement justifies seizure of the SD card and denying the motion as to Sukhtipyaroge's HTC cell phone based on the independent-source doctrine.

## ANALYSIS

The Fourth Amendment to the United States Constitution guarantees the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV. Warrantless searches and seizures are presumptively unreasonable. *Payton v. New York*, 445 U.S. 573,

3

586 (1980). Evidence obtained in violation of the Fourth Amendment is subject to the exclusionary rule, *Herring v. United States*, 555 U.S. 135, 139 (2009), unless the government proves by a preponderance of the evidence that an exception to the exclusionary rule applies, *Nix v. Williams*, 467 U.S. 431, 444 (1984); *United States v. Kennedy*, 427 F.3d 1136, 1144 (8th Cir. 2005).

Both the United States and Sukhtipyaroge object to the R&R. The United States objects to the recommended suppression of the SD card, arguing that an exception to the warrant requirement justifies the seizure of the SD card. In support of his objection, Sukhtipyaroge argues that the independent-source doctrine does not excuse the warrantless search of the HTC cell phone. The Court reviews these objections de novo, *see* 28 U.S.C. § 636(b)(1)(C); *accord* LR 72.2(b)(3), and analyzes each in turn.

## I.     The SD Card

The R&R recommends granting Sukhtipyaroge's motion to suppress the SD card because neither exigent circumstances nor the inevitable-discovery doctrine excuse the warrantless seizure of the SD card. In support of its objection, the United States argues that the warrantless seizure of the SD card is excused by A.M.'s consent, exigent circumstances, the inevitable-discovery doctrine, or the good-faith exception. Sukhtipyaroge counters that A.M. lacked the authority to consent to the seizure of the SD card and that no other exception to the warrant requirement exists under these circumstances.

Property is seized when there is a meaningful interference with an individual's possessory interest in the seized property. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Consent is a "well settled" exception to the requirement to obtain a warrant

before seizing property, *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973), and must be obtained from a party with a possessory interest in the property, *United States v. Matlock*, 415 U.S. 164, 171 (1974).  A third party may consent to the seizure of property if the third party shares sufficient common authority over the property.  *United States v. Clutter*, 674 F.3d 980, 983 (8th Cir. 2012); *see also Matlock*, 415 U.S. at 176.  The Fourth Amendment is not violated when law enforcement officers reasonably rely on a third party's apparent authority to consent to seizure.  *Clutter*, 674 F.3d at 983.

The United States relies on *Clutter* to support its contention that a warrant was not required to seize the SD card in light of A.M.'s consent.  In *Clutter*, after the defendant was arrested for burglary, he identified certain computers that he used to facilitate his crime.  *Id.* at 982-83.  These computers were located in a residence that the defendant shared with his father.  *Id.*  During a search of these computers, law enforcement officers discovered suspected images of child pornography.  *Id.*  The officers then seized *other* computers from the residence with the consent of the defendant's father.  *Id.*  The Eighth Circuit determined that the warrantless seizure of these computers was lawful because the defendant's father had actual possession of and joint access to the computers, he consented to their seizure, law enforcement had probable cause to believe that the computers contained evidence of a crime, and the temporary seizure of the computers did not meaningfully interfere with the defendant's possessory interest.  *Id.* at 984-85.[3]

---

[3]   *Clutter* also recognized that exigent circumstances, the potential destruction or tampering of evidence, justified the "limited purpose in temporarily seizing the computers." *Id.* at 985.  The defendant's father had joint access to the computers, knew why law enforcement wanted to seize them, and urged officers to take them. *Id.*; *accord United States v. Beasley*, 688 F.3d 523, 530 (8th Cir. 2012) (recognizing a third party's

*Clutter* is persuasive. As in *Clutter*, the evidence here establishes joint access, consent to seize by an individual with actual possession, probable cause that the seized item contained evidence of a crime, and a temporary seizure that did not meaningfully interfere with a possessory interest. A.M.'s residence at Royal Orchid provided joint access to Sukhtipyaroge's computer. And according to A.M.'s statements to Detective Schantzen, Sukhtipyaroge gave A.M. permission to use the computer to communicate with A.M.'s family, the computer may contain images of child pornography, and A.M. possessed an SD card containing the suspected images. Immediately after seizing the SD card, Detective Schantzen applied for a warrant to search the contents of the SD card. Probable cause that the SD card contained evidence of a crime also supported the seizure. And the temporary nature of the seizure—particularly given that A.M. had possessed the SD card for approximately one year—did not meaningfully interfere with Sukhtipyaroge's possessory interest in the property. Under these limited circumstances, Detective Schantzen reasonably relied on A.M.'s apparent authority to consent to the seizure of the SD card. *See id.*; *see also Matlock*, 415 U.S. at 171 n.7 (recognizing that the authority to consent rests on "mutual use of the property by persons generally having joint access or control for most purposes"); *United States v. Ladell*, 127 F.3d 622, 624 (7th Cir. 1997) (recognizing the risk that a third party may consent to a search of all common areas or those areas to which the third party has access). Accordingly, A.M.'s consent establishes an exception to the warrant requirement such that Detective Schantzen's seizure of the SD card did not violate the Fourth Amendment. For this

legitimate interest in turning over suspected contraband and law enforcement's legitimate interest in preserving such evidence).

reason, the Court need not reach the parties' alternative arguments addressing the constitutionality of the seizure.

The Court sustains the objection of the United States to this aspect of the R&R and rejects the R&R's recommendation to grant Sukhtipyaroge's motion to suppress the SD card.

## II. The HTC Cell phone

The R&R also recommends denying Sukhtipyaroge's motion to suppress evidence obtained from the HTC cell phone because the evidence is admissible under the independent-source doctrine. Sukhtipyaroge objects, arguing that the independent-source doctrine is inapplicable because the United States would not have applied for a search warrant for the HTC cell phone absent the tainted evidence the state authorities recovered during their warrantless search of the device.

Evidence obtained through an unlawful search is admissible when that evidence also is obtained lawfully through an independent source. *Murray v. United States*, 487 U.S. 533, 538-39 (1988). The independent-source doctrine applies when the United States would have applied for a warrant without having first acquired tainted information and the affidavits in support of the warrant application establish probable cause without any reliance on the tainted information. *Id.*; *United States v. Swope*, 542 F.3d 609, 613-14 (8th Cir. 2008). Sukhtipyaroge concedes that the warrant application for the HTC cell phone did not include any tainted information.

According to Sukhtipyaroge, the United States "would not have applied for the search warrant for the HTC cell phone had Detective Schantzen not provided . . . tainted information he obtained in his warrantless search of the phone's data." This argument is

not supported by the record. Before any search of the HTC cell phone, A.M. alleged that Sukhtipyaroge owned a cell phone and used it to take naked photographs of A.M. Detective Schantzen obtained search warrants for Sukhtipyaroge's residence and Royal Orchid based on A.M.'s allegations, not evidence derived from the warrantless search. Each warrant included authorization to seize cellular telephones and permitted the forensic examination of the same. On these facts, the record establishes that the government not only *would* have applied for a search warrant for Sukhtipyaroge's cell phone before obtaining any tainted evidence, but that the government actually *did* so. For these reasons, the independent-source doctrine excuses the warrantless search of Sukhtipyaroge's HTC cell phone by the state authorities.

Sukhtipyaroge's objection is overruled and the Court adopts the recommendation of the R&R to deny Sukhtipyaroge's motion to suppress evidence obtained from the HTC cell phone.

## ORDER

Based on the foregoing analysis, the R&R, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendant Pisanu Sukhtipyaroge's objection to the R&R, (Dkt. 85), is **OVERRULED**;

2. Plaintiff United States of America's objection to the R&R, (Dkt. 87), is **SUSTAINED** as outlined herein;

3. The January 11, 2018 R&R, (Dkt. 83), is **ADOPTED IN PART AND REJECTED IN PART** as outlined herein; and

4. Defendant Pisanu Sukhtipyaroge's Motion to Suppress Evidence Obtained as a Result of Search and Seizure, (Dkt. 46), is **DENIED**.


Dated: April 10, 2018                                       s/Wilhelmina M. Wright
                                                            Wilhelmina M. Wright
                                                            United States District Judge